# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

LAMOTTA MCMAHAN, *et al.*,     )
                              )     Case No. 1:24-cv-96
         *Plaintiffs*,        )
                              )     Judge Travis R. McDonough
v.                            )
                              )     Magistrate Judge Christopher H. Steger
OLIN CORPORATION, *et al.*,   )
                              )
         *Defendants*.        )

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' motion for leave to file a fourth amended complaint (Doc. 184). For the following reasons, the motion (*id.*) will be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

Defendant Olin Corporation ("Olin") owns and operates a chemical facility in Bradley County, Tennessee ("the Facility"). (Doc. 175, at 2; Doc. 191, at 35–36.) The Facility surrounds a separate plant ("the Sister Facility"), which processes the products produced by the Facility. (Doc. 175, at 2; Doc. 191, at 75–76.) Olin owned and operated both facilities from 1962 to approximately 1999. (Doc. 177, at 2; Doc. 191, at 35–37.) Defendant Arch Chemicals, Inc. ("Arch") owned and operated the Sister Facility from 1999 to 2011. (Doc. 177, at 2; Doc. 191,

---

[1] The Court treats all of Plaintiffs' well-pled factual allegations as true in its factual summary as is required under a Rule 12(b)(6) standard. *See Thurman v. Pfizer*, *Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). The Court relies on Plaintiffs' operative complaint (Doc. 111) and their proposed fourth amended complaint (Doc. 191) in its factual summary, as the latter is presently at issue (*see* Doc. 184).

1

at 37, 40.)  Defendants and former Defendants Bilfinger Industrial Services, Inc. ("Bilfinger"), Turner Specialty Services, LLC ("Turner"), White Electrical Construction Co. ("White"), Custom Mechanical Contractors, Inc.  ("Custom Mechanical"), The Robins and Mortin Group ("Robins"), and Pen Gulf, Inc. ("Pen") performed work at the Facility and Sister Facility.[2]  (Doc. 175, at 2; Doc. 191, at 41–43.)

Plaintiffs fall into one of four groups:  (1) employees of Olin at the Facility ("Facility Workers"), (2) contractor workers at the Facility and/or the Sister Facility ("Contractor Workers"), (3) employees of the operators of the Sister Facility ("Sister Facility Workers"), and (4) family members of workers at both facilities ("Family Members").  (Doc. 111, at 22–32; Doc. 175, at 3; Doc. 191, at 22–32.)  In their operative complaint,[3] Plaintiffs assert various theories of liability against Defendants concerning mercury exposure originating from the Facility and Sister Facility.  (*See* Docs. 175, 176, 177 (detailing Plaintiffs' allegations).) Specifically, they allege the following claims against Olin:  (1) the Sister Facility Workers, Contractor Workers, and Family Members allege negligence, (2) the Sister Facility Workers, Contractor Workers, and Family Members allege misrepresentation by concealment, (3) the Contractor Workers allege fraudulent misrepresentation, (4) the Sister Facility Workers and Contractor Workers allege premises liability, and (5) the Contractor Workers allege negligence per se.  (Doc. 176, at 4–5.)  They allege the following claims against Arch:  (1) the Facility Workers, Contractor Workers, and Family Members allege negligence claims, and (2) the Facility Workers and Contractor Workers allege premises liability claims.  (Doc. 177, at 3.)  They

---

[2] The Court will refer to these Defendants and former Defendants collectively as "the Contractor Defendants."

[3] Plaintiffs have filed four complaints and are seeking to file their fifth.  (*See* Docs. 1, 88, 96, 111, 184.)

2

allege the following claims against the Contractor Defendants: (1) the Facility Workers allege negligence against the Contractor Defendants who performed work at the Facility, (2) the Sister Facility Workers allege negligence against the Contractor Defendants who performed work at the Sister Facility, and (3) the Facility Workers, Sister Facility Workers, and Family Members allege misrepresentation by concealment against all Contractor Defendants. (Doc. 175, at 3.)

Defendants moved to dismiss these claims on March 3, 2025. (*See* Docs. 114, 116, 118, 120, 122.) The Court resolved these motions on December 23, 2025. (*See* Docs. 175, 176, 177.) In doing so, it dismissed all claims asserted against Bilfinger, Turner, White, Custom Mechanical, and former Defendant Innovative Water Care, LLC ("IWC").[4] (Doc. 175, at 23; Doc. 177, at 20.) The Court also dismissed all fraudulent concealment and fraudulent misrepresentation claims alleged against the Contractor Defendants.[5] (Doc. 175, at 23.) The Court granted Olin's motion to dismiss in so far as any Sister Facility Workers alleged claims that originated from their time employed by Olin and denied the motion on all other grounds. (Doc. 176, at 23.) The Court granted Arch's motion to dismiss as to the claims of ten Plaintiffs whose employment ended before Arch acquired the Sister Facility but denied the motion on all other grounds. (Doc. 177, at 20–21.) The Court's rulings left all five categories of claims alleged against Olin, the two categories of claims alleged against Arch, and the negligence claims alleged against Pen and Robins.

---

[4] Plaintiffs alleged that IWC began operating the Sister Facility sometime around 2016 and asserted claims identical to those against Arch. (Doc. 177, at 2–3.) However, Plaintiffs do not intend to reallege claims against IWC (Doc. 184, at 5), meaning further discussion of Plaintiffs' previous allegations against IWC are not relevant to the present Opinion.

[5] The Court considered whether Plaintiffs stated a claim for fraudulent misrepresentation even though their complaint does not explicitly label or categorize any allegations as bringing a fraudulent-misrepresentation claim against the Contractor Defendants. (*See* Doc. 175, at 17 n. 15.)

Plaintiffs filed the present motion for leave to amend their complaint on January 16, 2026. (*See* Doc. 184.) Plaintiffs represent that they intend to reallege negligence claims against Bilfinger, Turner, White, and Custom Mechanical. (*Id.* at 5.) Plaintiffs also represent that they intend to reallege fraud claims against all Contractor Defendants. (*See id.* at 6.) After Plaintiffs filed the motion, the Court invited the Contractor Defendants, including those dismissed from the case, to file briefing in opposition to Plaintiffs' motion.[6] (*See* Doc. 186.) The Contractor Defendants filed briefs in opposition on February 19, 2026.[7] (*See* Docs. 207, 208, 209, 210, 212.) As such, Plaintiffs' motion is ripe for review.

## II.    STANDARD OF LAW

"Leave to amend should be 'freely' granted 'when justice so requires.'" *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018) (quoting Fed. R. Civ. P. 15(a)(2)). In the absence of factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

---

[6] The Court invited this briefing despite Bilfinger, Turner, White, and Custom Mechanical's status as non-parties. As the Court outlines in this Opinion, a court may deny leave to amend when "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment" support such a decision. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640 (6th Cir. 2018). A court evaluates a proposed complaint's futility under a Rule 12(b)(6) standard. *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 515 (6th Cir. 2025). Thus, allowing for argument on these issues now, as opposed to months later when these Defendants may elect to file motions to dismiss, will promote the efficient and timely resolution of this dispute. Additionally, as the Court stated in communications with the parties, the dismissed Defendants will retain all procedural rights afforded by the Federal Rules of Civil Procedure, and any briefing in opposition to Plaintiffs' motion for leave to amend does not waive those rights. Thus, Bilfinger, Turner, White, and Custom Mechanical may still file Rule 12 motions as appropriate.

[7] Turner filed its brief a day late, on February 20, 2026. (*See* Doc. 214.) The Court will consider Turner's arguments despite its untimely filing.

4

etc.," leave to amend should be granted. *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile if, even with the proposed changes, the complaint still fails to state a claim under Rule 12(b)(6)." *Grand Traverse Band of Ottawa & Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 515 (6th Cir. 2025) (citing *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024)).

On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the truth of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of truth, however, does not extend to legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Rule 9(b) applies in cases in which a plaintiff alleges fraud and requires that "a party []

state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011) (internal quotations and citation omitted). The purposes of Rule 9(b) are to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and fraudulent behavior." *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 771 (6th Cir. 2016). While this is a high bar, "so long as a [plaintiff] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008).

The Sixth Circuit has emphasized that "Rule 9(b) should be interpreted in harmony with Rule 8's statement that a complaint must only provide 'a short and plain statement of the claim.'" *Id.* at 503 (quoting Fed. R. Civ. P. 8(a)). It has also cautioned that "[Rule 9(b)] should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *Id.* (citation modified); *see U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("*Bledsoe II*") ("When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading."). Therefore, "[a]lthough conjecture and speculation are insufficient under Rule 9(b), [a court] must construe the complaint in the light most favorable to the plaintiff [and] accept all factual allegations as true." *Prather*, 838 F.3d at 771 (citations omitted).

6

## III. ANALYSIS

### A. Plaintiffs' New Allegations

In their proposed fourth amended complaint, Plaintiffs offer: (1) new affidavits from certain Plaintiffs (*see* Docs. 198-5, 198-6, 198-7, 198-8, 198-9, 198-10, 198-11, 198-12, 198-13), (2) new allegations concerning the Facility (*see* Doc. 191, at 66–67), (3) new allegations regarding mercury exposure and how the Contractor Defendants allegedly contributed to such exposure (*see id.* at 75–190), and (4) new allegations pertaining to their fraudulent-concealment claims against the Contractor Defendants (*see id.* at 271–72). Plaintiffs also allege two new categories of negligence claims against the Contractor Defendants, with the Contractor Workers and Family Members asserting negligence claims against the Contractor Defendants. (*See id.* at 306–17.) The Contractor Workers do not assert their negligence claims against the Contractor Defendants that employed them. (*Id.* at 306.)

The Contractor Defendants argue that Plaintiffs should not be granted leave to amend because they have: (1) repeatedly failed to cure the deficiencies in their complaint (Doc. 207, at 5–7), and (2) failed to sufficiently state their claims, rendering amendment futile (*see generally* Docs. 207, 208, 209, 210, 212, 214). The Contractor Defendants argue that Plaintiffs' amendments to their negligence claims are futile because (1) they allege a theory of nonfeasance rather than misfeasance (Doc. 207, at 9–15; Doc. 210, at 7–10; Doc. 212, at 3–5), (2) they inadequately allege that a duty of care existed (Doc. 207, at 14–15; Doc. 214, at 34–37), (3) they inadequately allege breach (Doc. 210, at 10–11), and (4) they inadequately allege proximate cause (Doc. 207, at 16). Additionally, Turner argues that Plaintiffs fail to allege specific mercury-exposure scenarios that connect Turner's activities at the Facility and Sister Facility to individual Plaintiffs. (*See* Doc. 214.) The Contractor Defendants argue that Plaintiffs'

7

fraudulent-concealment claims fail because they insufficiently allege the elements of the claim and fail to meet the requirements of Rule 9(b). (*See* generally Docs. 207, 208, 209, 210, 212, 214.) Bilfinger also argues that Plaintiffs' group pleading in portions of the proposed fourth amended complaint render amendment futile. (*See* Doc. 207, at 23–25.)

## B. Futility of Negligence Claims

To sufficiently plead a negligence claim under Tennessee law, a plaintiff must allege facts sufficient to plausibly establish: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Perry v. Jenkins & Stiles, LLC*, No. 3:21-CV-414-KAC-JEM, 2023 WL 3922636, at *3 (E.D. Tenn. Feb. 7, 2023) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)).

"Generally speaking, persons have a duty to others to refrain from engaging in affirmative acts that a reasonable person should recognize as involving an unreasonable risk of causing an invasion of an interest of another or acts which involve an unreasonable risk of harm to another." *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 656 (M.D. Tenn. 2023) (quoting *Riggs v. Wright*, 510 S.W.3d 421, 427 (Tenn. Ct. App. 2016)). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). "For a defendant to owe a duty, the risk of harm to the plaintiff must be foreseeable[,]" as "foreseeability is the test of negligence." *Tebeau v. Millerwood Invs., LLC*, No. W2024-00642-COA-R3-CV, 2025 WL 985381, at *4 (Tenn. Ct. App. Mar. 28, 2025) (citation modified) (citations omitted). A "duty of care does not

8

include an affirmative duty to act for the protection of another . . . unless the defendant stands in some special relationship to either the person who is the source of the danger, or to the person who is foreseeably at risk from the danger." *Doe*, 688 F. Supp. 3d at 656 (citation modified) (citations omitted).  To determine whether a special relationship exists, courts must "weigh public policy considerations, as well as whether the plaintiff's injuries and the manner in which they occurred were reasonably foreseeable." *Id.* (quoting *Biscan*, 160 S.W.3d at 479) (internal quotations omitted).  "Whether the defendant owed the plaintiff a duty of care is a question of law to be determined by the court." *Kae v. Cumberland Univ.*, 194 F. Supp. 3d 676, 683 (M.D. Tenn. 2016) (quoting *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 89 (Tenn. 2000)) (internal quotations omitted).

"Once a duty of care has been established, the question becomes whether defendant failed to exercise reasonable care under the circumstances, i.e., whether defendant breached the duty." *Perry*, 2023 WL 3922636 at *3 (quoting *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 404 (6th Cir. 2004)) (internal quotations omitted).  This is a question of fact, and, thus, ill-suited for dispositive motions.  *See Giggers*, 277 S.W.3d at 366 (explaining that "the question of duty and of whether defendants have breached that duty is one for the jury to determine based upon proof presented at trial") (citation modified) (quoting *McClung v. Delta Square Ltd. P'ship.*, 937 S.W.2d 891, 894 (Tenn. 1996)); *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 552 (Tenn. 2005) (explaining that plaintiffs must still prove a breach of duty at trial after establishing such duty exists).

After establishing breach, a plaintiff must then establish causation.  *See Perry*, 2023 WL 3922636 at *3.  "Causation in fact and proximate cause are distinct elements of negligence . . . ." *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) (citation and internal quotations omitted).

"To plead causation in fact, the plaintiff must allege that an injury would not have occurred but for the defendant's conduct." *Perry*, 2023 WL 3922636 at *3 (citation omitted). "It is not necessary that [a defendant's] act be the *sole* cause of the plaintiff's injury, only that it be *a* cause." *Hale*, 166 S.W.3d at 718 (emphasis in original). To plead proximate cause, a plaintiff must plausibly allege that:

> (1) the tortfeasor's conduct [was] a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* at 719 (citation omitted). "Cause in fact and proximate cause are 'ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome.'" *Id.* at 718 (quoting *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 612 (Tenn. 1994)).

### i.     *New Negligence Allegations*

Following the Contractor Defendants' motion to dismiss, the Court found that Plaintiffs' negligence claims asserted against Bilfinger, Turner, White, and Custom Mechanical were insufficiently pled because Plaintiffs alleged "no facts supporting a duty of care." (Doc. 175, at 12.) The Court explained that Plaintiffs' complaint lacked the factual allegations that "provide the context needed to allow for a plausible inference" that a duty of care existed. (*Id.* at 12 n.10.) In contrast, the Court found that Plaintiffs adequately pled that Pen and Robins owed a duty of care, as Plaintiffs' allegations concerning Pen and Robins's role in performing decommissioning and demolition work ("D&D"), "the potential for mercury exposure during D&D work, and the safety precautions that are typically followed during such work" allowed for a plausible

10

inference that Pen and Robins owed the Facility Workers and Sister Facility Workers a duty of care. (*See id.* at 12–13.)

In their proposed fourth amended complaint, Plaintiffs allege that Bilfinger employees: (1) performed maintenance and construction at the Facility and Sister Facility, which included "hydro-blasting, Mercury Recovery, D&D, pipe removal, and Cell Maintenance" (Doc. 191, at 79–80, 85, 87, 89–91, 93), (2) used equipment exposed to areas high in mercury without changing or cleaning such equipment (*id.* at 39, 57–61, 80, 82–83, 92–93), and (3) performed work around mercury that exposed other workers (*id.* at 86–91, 93–94). They allege that Turner employees: (1) performed general maintenance at the Facility and Sister Facility, "which included repairing and replacing steel structures, pipe work and repair, removing, repairing and adding vessels, changing valves, and installing insulation" (*id.* at 96–98), (2) used equipment exposed to areas high in mercury without changing or cleaning such equipment (*id.* at 99–100), and (3) performed work around mercury that exposed other workers (*id.* at 97–98). Plaintiffs allege that White employees: (1) performed "Electrical Maintenance, General Maintenance, Cell Maintenance, Maintenance Parts Rebuild, Mercury Recovery," and some construction at the Facility and Sister Facility (*id.* at 79, 86, 101–05, 107–08, 115, 120, 137), (2) used equipment exposed to areas high in mercury without changing or cleaning such equipment (*id.* at 103–06), and (3) performed work around mercury that exposed other workers (*id.* at 101–05, 107–08). Plaintiffs allege that Custom Mechanical employees: (1) performed "mechanical work, pipe removal, pipe fabrication, pipe installation, and Mercury Recovery" (*id.* at 109–12, 120), and (2) performed work in mercury-contaminated areas that exposed other workers (*id.* at 110–12).

11

### ii. Duty

Plaintiffs plausibly allege that Bilfinger, Turner, White, and Custom Mechanical owed the Facility Workers, Sister Facility Workers, Family Members, and non-employee Contractor Workers a duty of care in their proposed fourth amended complaint. As outlined above, Plaintiffs provide specific allegations pertaining to each Defendant, and, additionally, they allege how the "Operation and Maintenance" of the Facility and Sister Facility generally create a risk of mercury exposure.[8] (Doc. 191, at 51–54.) Plaintiffs also allege how mercury exposure at the Facility and Sister Facility could translate to mercury exposure at home for the Family Members. (*Id.* at 136–42.) These allegations are like those pertaining to Pen and Robins that the Court found sufficient (*see* Doc. 175, at 12–13), as Plaintiffs describe the type of work these Defendants completed, how such work related to mercury at the Facility and Sister Facility, and how Plaintiffs could have been exposed to mercury. Thus, assuming the truth of Plaintiffs' allegations, it is plausible that Bilfinger, Turner, White, and Custom Mechanical could have reasonably foreseen that the alleged inadequacies of their work at the Facility and Sister Facility

---

[8] Plaintiffs' specific allegations as to Bilfinger, Turner, White, and Custom Mechanical undermine Bilfinger's arguments concerning group pleading (Doc. 207, at 23–25) and Turner's arguments concerning the lack of specific allegations relevant to its conduct (Doc. 214, at 25–37). Plaintiffs provide clear notice to each Contractor Defendant as to the claims alleged even if certain portions of the proposed complaint rely on group pleading, as Plaintiffs' factual allegations that pertain to a specific Defendant "set forth facts with sufficient specificity to state a claim for relief" when read in conjunction with the portions of complaint that rely on group pleading. *See Nissan N. Am., Inc. v. Cont'l Auto. Sys., Inc.*, No. 3:19-CV-00396, 2019 WL 4820477, at *4 (M.D. Tenn. Oct. 1, 2019) (citation modified). Requiring more is unnecessary and would run contrary to Rule 8's requirement for a "short and plain statement" of the case in this very complex matter. As the Court stated before, it "will not dismiss Plaintiffs' claims simply because they relied on group pleading in certain portions of the complaint," but it will "dismiss claims that lack sufficient factual allegations to plausibly state a claim for relief." (Doc. 175, at 8.)

would pose an unreasonable risk of harm to the Facility Workers, Sister Facility Workers, Family Members, and non-employee Contractor Workers.

Contrary to Defendants' arguments, Plaintiffs assert a misfeasance theory of negligence. Plaintiffs allege a scenario where Bilfinger, White, Custom Mechanical, and Turner performed work at the Facility and Sister Facility that created a risk of mercury exposure. (*See, e.g.*, Doc. 191, at 86–88, 96–97, 101–03, 110–12 (describing activities that *created* a mercury-exposure risk).) In *Satterfield v. Breeding Insulation Co.*, the Tennessee Supreme Court extensively analyzed the difference between misfeasance and nonfeasance. *See* 266 S.W.3d 347, 357–64 (Tenn. 2008). In doing so, it found that the defendant engaged in misfeasance because the case concerned "a risk created" by the defendant. *See id.* at 364. The court categorized the operation of a facility in an unsafe manner as "an affirmative act" that created such a risk. *See id.* Here, although the Contractor Defendants did not own the Facility or Sister Facility, they still performed "affirmative acts" that created an unsafe risk of mercury exposure according to Plaintiffs' proposed fourth amended complaint. (*See, e.g.*, Doc. 191, at 86–88, 96–97, 101–03, 110–12.) Negligently performing work around mercury *creates* a risk of mercury exposure and is distinguishable from a situation in which "the defendant has made the plaintiff's situation no worse." *See Allstate Prop. & Cas. Ins. Co. v. Sevier Cnty. Elec. Sys.*, 666 S.W.3d 401, 425 (Tenn. Ct. App. 2022) (explaining that "instances where the defendant has made the plaintiff's situation no worse" constitute nonfeasance). Pursuant to the analysis in *Satterfield*, this is misfeasance, and a general duty-of-care analysis applies to Plaintiffs' claims. *See* 266 S.W.3d at 357–64.

The Contractor Defendants also argue that their burden to engage in alternative conduct outweighs the foreseeable probability of Plaintiffs' harms, such that they did not owe Plaintiffs a duty of care. (*See* Doc. 207, at 15; Doc. 210, at 1 (incorporating Bilfinger's arguments); Doc.

13

212, at 1, 5 (same).) "When the existence of a particular duty is not a given or when the rules of the established precedents are not readily applicable," Tennessee courts consider: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; (5) the feasibility of alternative conduct that is safer; (6) the relative costs and burdens associated with that safer conduct; (7) the relative usefulness of the safer conduct; and (8) the relative safety of alternative conduct. *Satterfield*, 266 S.W.3d at 365 (citations omitted); *see also Doe*, 688 F. Supp. 3d at 656–57 (listing the same factors).

Here, *Satterfield* strongly supports the conclusion that Plaintiffs have plausibly alleged a duty of care, because its facts are similar to those Plaintiffs allege. *See* 266 S.W.3d at 363–75 (finding that a plaintiff adequately alleged that the defendant owed a duty of care to "persons who came into close and regular contact . . . with its employees' work clothes" when the defendant's employees allegedly "worked with materials containing asbestos on a daily basis" but did not adequately address the risks this created). Even if *Satterfield* was not applicable to this matter, Plaintiffs allege that mercury exposure poses a risk of serious harms (*see* Doc. 191, at 159–82), they allege the various precautions that could have been taken (*see id.* at 201–48), and, as established above, they allege a scenario in which their purported harms were foreseeable. These allegations suggest that Plaintiffs could plausibly satisfy the balancing test outlined above, meaning their allegations are sufficient to establish that the Contractor Defendants owed the

14

Facility Workers, Sister Facility Workers, Family Members, and non-employee Contractor

Workers a duty of care.[9]

### iii. Breach

Plaintiffs also plausibly allege that Bilfinger, Turner, White, and Custom Mechanical

breached a duty of care owed to Plaintiffs in their proposed fourth amended complaint. Among

several other allegations of breach, Plaintiffs allege that the Contractor Defendants failed to: (1)

"adequately warn Plaintiffs . . . of the dangers presented by Defendants' work on mercury-

contaminated premises," (2) adequately train Plaintiffs "to identify and avoid or at least

minimize exposure to mercury[,]" (3) provide "information as to what would be reasonably safe

and sufficient apparel and proper protective equipment," and (4) "take reasonable precautions or

exercise reasonable care to publish, adopt, and enforce a safe method of working with or around,

handling, cleaning up, or disposing of mercury." (Doc. 191, at 279, 284, 298–300, 302–05, 308–

11, 314–16.) Considering Plaintiffs' specific allegations as to Bilfinger, Turner, White, and

Custom Mechanical (*see supra* Part III.B.i), it is plausible that these Defendants could have

breached the duty of care owed to non-employee Plaintiffs by: (1) failing to warn such Plaintiffs

of the mercury-related dangers their work allegedly created, (2) failing to adequately train their

employees as to how to complete such work, and (3) failing to implement precautions that might

---

[9] A more in-depth analysis of these factors is unwarranted at this stage of the litigation, as discovery will allow for arguments with greater factual specificity. For example, Bilfinger asserts that it "could not have engaged in an alternative course of conduct without shutting down the operation of its business." (Doc. 207, at 15.) This is a factual assertion that requires evidentiary support, and the Court must construe all factual inferences in Plaintiffs' favor under the Rule 12(b)(6) standard. *See Thurman*, 484 F.3d at 859. Given the applicable standard, an analysis of Tennessee's duty-of-care balancing test that largely focuses on foreseeability is sufficient. *See Satterfield*, 266 S.W.3d at 367 ("While every balancing factor is significant, the foreseeability factor has taken on paramount importance in Tennessee."); *id.* at 367–68 (stating that "courts should take care not to invade the province of the jury" when considering the balancing test factors).

15

have reduced the risk of mercury exposure during such work.  Further, the issue of breach is best reserved for trial, not a Rule 12(b)(6) motion.  (Doc. 175, at 14 (citing *Giggers*, 277 S.W.3d at 366; *West*, 172 S.W.3d at 552; *Doe*, 688 F. Supp. 3d at 663).)  Accordingly, Plaintiffs have sufficiently pled that Bilfinger, Turner, White, and Custom Mechanical breached a duty of care.

### iv.    *Causation*

Plaintiffs plausibly allege that the Contractor Defendants' negligence was the proximate cause of their injuries in their proposed fourth amended complaint.  The Contractor Defendants argue that Plaintiffs have insufficiently pled proximate cause because they rely on conclusory allegations that fail to demonstrate that Plaintiffs' injuries were "foreseen or foreseeable."  (Doc. 207, at 16.)  Bilfinger specifically cites a portion of the complaint in which Plaintiffs allege that Bilfinger's agents "unknowingly contaminated the air where OLIN, PEN, and DUNCAN [workers] were working in close proximity" to show that Bilfinger did not foresee Plaintiffs' alleged injuries.  (*See id.* (citation modified).)

However, Plaintiffs describe the activities of each Contractor Defendant that allegedly created a risk of mercury exposure (*see, e.g.*, Doc. 191, at 86–88, 96–97, 101–03, 110–12), how such activities could have resulted in mercury exposure (*id.* at 156–59), and the harms of mercury exposure (*id.* at 159–82).  Taking these allegations as true, they follow a logical path and plausibly establish that the Contractor Defendants' alleged activities could have foreseeably caused Plaintiffs' alleged mercury-related injuries.  Whether the Contractor Defendants actually knew that the alleged activities of their employees could have caused Plaintiffs' injuries is irrelevant to the objective standard of foreseeability at issue.  *See Hale*, 166 S.W.3d at 719 (considering whether "the harm giving rise to the action *could have reasonably been foreseen* or anticipated *by a person of ordinary intelligence and prudence*" and whether the plaintiff's injury

was "of the type to be expected" from the defendant's conduct) (emphasis added)).  Plaintiffs'

allegations plausibly establish that the Contractor Defendants' actions were a proximate cause of

their injuries.

### C.  Futility of Fraudulent-Concealment Claims[10]

"In Tennessee, the tort of fraudulent concealment is committed when a party who has a

duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon

the resulting misrepresentation, thereby suffering injury."  *EPAC Techs., Inc. v. HarperCollins*

*Christian Publ'g, Inc.*, 810 F. App'x 389, 395 (6th Cir. 2020) (quoting *Shah v. Racetrac*

*Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003)) (internal quotations omitted).  "The duty to

disclose arises in three circumstances:  (1) where there is a previous fiduciary relation; (2) where

it appears one or each of the parties to the contract expressly reposes a trust and confidence in the

other;[11] and (3) when the contract or transaction is intrinsically fiduciary."  *Id.* (citation

modified).

---

[10] Again, Plaintiffs do not explicitly label or categorize any allegations as bringing a fraudulent-misrepresentation claim against the Contractor Defendants.  (*See* Doc. 191.)  Additionally, their new fraud-related allegations concern "Misrepresentation by Concealment."  (*Id.* at 271.)  Accordingly, the Court does not construe any allegations in Plaintiffs' proposed fourth amended complaint as asserting a fraudulent-misrepresentation claim.

[11] Courts have described this as a "confidential relationship."  *See EPAC*, 810 F. App'x at 395; *Shah*, 338 F.3d at 571; *Hamilton Cnty. Emergency Commc'ns Dist. v. Orbacom Commc'ns Integrator Corp.*, No. 1:04-CV-7, 2006 WL 228893, at *4–5 (E.D. Tenn. Jan. 30, 2006).  Caselaw suggests that some situations may fit this category even in the absence of a contractual relationship.  *See Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974) ("[I]t appears that any relation of confidence between persons which gives one domination over the other falls within the category."); *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977) (evaluating confidential relationships in the context of a deed conveyance); *Edwards v. Travelers Ins. of Hartford, Conn.*, 563 F.2d 105, 115 (6th Cir. 1977) ("Under Tennessee law, a confidential relationship is one in which "confidence is placed by one in the other and the recipient of that confidence is the dominant personality, with the ability, because of that confidence, to influence and exercise dominion over the weaker or dominated party" (citation modified)); *McGuirk Oil Co. v. Amoco Oil Co.*, 889 F.2d 734, 737–38 (6th Cir. 1989) (quoting *Edwards*); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *McGuirk*).

17

"Fiduciary relationships may arise whenever confidence is reposed by one party in another who exercises dominion and influence." *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 398 F. Supp. 3d 258, 270 (M.D. Tenn. 2019), *aff'd on other grounds*, 810 F. App'x 389 (6th Cir. 2020) (quoting *Oak Ridge Precision Indust., Inc. v. First Tenn. Bank Nat. Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)). "[A] confidential relationship . . . is created when confidence is placed by one on the other and the recipient of that confidence is the dominant personality with the ability because of that confidence to influence and exercise dominion over the weaker or dominated party." *Id.* (citation modified) (quoting *McGuirk Oil Co., Inc. v. Amoco Oil Co.*, 889 F.2d 734, 737–38 (6th Cir. 1989))). "Put another way, a confidential relationship is created when one person has dominion and control over another." *Id.* at 271 (citation modified) (quoting *Rogers v. First Nat'l Bank*, No. M2004-02414-COA-R3-CV, 2006 WL 344759, at *8 (Tenn. Ct. App. Feb. 14, 2006)). As with other fraud claims, a plaintiff alleging fraudulent concealment must meet the requirements of Rule 9(b). *See Sutton v. Penny Mac Loan Servs., LLC*, No. 2:23-CV-00064, 2025 WL 1868078, at *7 (M.D. Tenn. July 7, 2025).

### i. *New Fraud Allegations*

The Court previously found that Plaintiffs failed to sufficiently allege any fraud claims against the Contractor Defendants because their allegations lacked "any description of the relationship between the Contractor Defendants and the Facility Workers, the Sister Facility Workers, and the Family Members." (Doc. 175, at 16.) Additionally, Plaintiffs did not provide "any factual allegations that described the time, place, and content of the alleged misrepresentations," as is required by Rule 9(b). (*Id.* (citation modified) (citing *Chesbrough*, 655 F.3d at 467).)

In their proposed fourth amended complaint, Plaintiffs allege that the Contractor Defendants did not disclose the dangers of mercury and misled them as to their safety. (Doc. 191, at 88 (alleging that Bilfinger supervisors informed a Bilfinger worker that he was safe while working), at 91–92 (alleging that Bilfinger did not disclose the dangers of mercury), at 98 (alleging that Turner did not provide adequate information regarding mercury), at 103–06 (alleging that White had knowledge regarding the dangers of mercury and did not disclose it), at 108–09 (alleging that information about mercury-related hazards were withheld), at 110–11 (alleging that Custom Mechanical represented that work around mercury at the Facility was safe to an employee), at 271–76 (generally alleging that the Contractor Defendants concealed information regarding mercury-related danger).) Plaintiffs provide allegations concerning representations or failures to disclose between specific Contractor Defendants and their own employees. (*See id.* at 88, 91–92, 98, 103–06, 108–09, 110–11.) Plaintiffs' allegations about the relationship between the Contractor Workers, Facility Workers, and Sister Facility Workers generally focus on their proximity and interaction with each other. (*See, e.g.*, *id.* at 79–80, 82–83, 86–87, 89, 93, 101–02, 104, 114, 116–17, 119–21.) Plaintiffs' allegations concerning the Family Members' relationship with the Contractor Defendants focus on the potential for mercury cross-contamination originating from the Facility and Sister Facility. (*See, e.g.*, *id.* at 136–42.)

### ii.     *Duty to Disclose*

The Facility Workers, Sister Facility Workers, and Family Members have not plausibly alleged fraudulent-concealment claims against the Contractor Defendants in their proposed fourth amended complaint, meaning their proposed amendments as to these claims are futile. The Facility Workers, Sister Facility Workers, and Family Members allege that they "reposed their trust and confidence in the Contractor Defendants to disclose material information

19

regarding the potential harms associated with exposure to toxic mercury in the workplace." (*Id.* at 323; *see also id.* at 271.)  They also allege that "they trusted that the Contractor Defendants would disclose necessary information required for Plaintiffs to protect themselves and their families," (*id.* at 327), and they contend that the Contractor Defendants' knowledge of OSHA and EPA regulations meant that they had superior knowledge to Plaintiffs (*see id.* at 190).

However, Plaintiffs do not allege any facts that suggest a relationship existed between these groups of Plaintiffs and the Contractor Defendants that required the Contractor Defendants to disclose the dangers of mercury.  Plaintiffs' allegations establish that the Contractor Workers worked in close proximity with the Facility Workers and Sister Facility Workers.  (*See, e.g.*, *id.* at 119–21.)  However, proximity to other workers does not imply an ability to exercise "dominion and control."[12]  *See EPAC*, 398 F. Supp. 3d at 271.  Precedent reveals that confidential or fiduciary relationships may resemble that between a parent and child, *see Robinson v. Robinson*, 517 S.W.2d 202, 206 (Tenn. Ct. App. 1974), conservator and ward, *see Parham v. Walker*, 568 S.W.2d 622, 624–25 (Tenn. Ct. App. 1978), or attorney and client, *see Mitchell v. Smith*, 779 S.W.2d 384, 389 (Tenn. Ct. App. 1989).  Additionally, the Sixth Circuit has held that a confidential relationship existed between an insurance company and an injured claimant after "the insurance company, by fraudulently applied economic leverage over the claimant, [got] rid of the claimant's counsel." *Edwards v. Travelers Ins. of Hartford, Conn.*, 563 F.2d 105, 115 (6th Cir. 1977).  This Court has also held that a confidential relationship may have existed between a plaintiff and its hired agent, after that agent accepted payments from an outside source hoping to gain an advantage in contract negotiations.  *See Hamilton Cnty. Emergency Commc'ns Dist. v.*

---

[12] The connection between the Family Members and the Contractor Defendants is even more attenuated, as Plaintiffs' allegations concerning proximity only address workers at the Facility and Sister Facility.

20

*Orbacom Commc'ns Integrator Corp.*, No. 1:04-CV-7, 2006 WL 228893, at \*5 (E.D. Tenn. Jan. 30, 2006).  None of these relationships are analogous to that alleged between the Facility Workers, Sister Facility Workers, Family Members, and Contractor Defendants.  (*See generally* Doc. 191.)  Accordingly, Plaintiffs have not plausibly alleged that the Contractor Defendants had a duty to disclose the potential harms associated with mercury exposure,[13] and, thus, they have not sufficiently alleged a fraudulent concealment claim.[14]

### D.  Further Amendment

The Contractor Defendants argue that Plaintiffs should not be permitted leave to amend because they have had two years and four prior opportunities to state their claims.  (*See* Doc. 207, at 5–7; Doc. 208, at 1 n.1 (incorporating the other Contractor Defendants' arguments); Doc. 209, at 1 n.2 (same); Doc. 210, at 1 (incorporating Bilfinger's arguments); Doc. 212, at 5 (same).)  Given the complexity and magnitude of this case, with several different causes of action brought by different groups of plaintiffs on an individual basis (*see* Docs. 111, 191), the Court finds that an additional opportunity to amend is warranted.  The Court expressly dismissed Plaintiffs' claims without prejudice (*see* Doc. 175, at 23), and Defendants were then on notice that Plaintiffs could move for leave to amend or refile suit.  The nature of the claims that Plaintiffs add or reallege in their proposed fourth amended complaint are similar to those in the third amended complaint.  (*See* Docs. 111, 191.)  Further, Plaintiffs promptly moved for leave to

---

[13] While Plaintiffs have not plausibly alleged that the Contractor Defendants had a duty to disclose the potential harms associated with mercury exposure in the context of their fraudulent-concealment claims, this is distinct from a failure-to-warn theory of breach as to their negligence claims against the Contractor Defendants.  As this Opinion demonstrates, the legal standards for negligence and fraudulent concealment are different and Plaintiffs' insufficiently pled fraudulent-concealment claims do not foreclose the potential negligence argument.

[14] Considering that Plaintiffs fail to plausibly state their fraudulent-concealment claims against the Contractor Defendants, the Court declines to determine whether Plaintiffs' allegations satisfy Rule 9(b).

amend and filed their proposed fourth amended complaint within two months after the Court resolved Defendants' motions to dismiss. (*See* Docs. 175, 176, 177, 184, 191.) No Defendants, including those dismissed from the case, will be prejudiced by Plaintiffs' opportunity to amend here. However, Plaintiffs have had ample opportunity to state their claims, and the Court is not inclined to allow leave for further substantive amendments absent extraordinary circumstances.[15]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to amend (Doc. 184) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' amended fraudulent-concealment claims against the Contractor Defendants would not survive a Rule 12(b)(6) motion, and, thus, the amendments to these claims are futile. Accordingly, Plaintiffs may file an amended complaint that includes all of their proposed amendments, with the exception of the fraudulent-concealment claims against the Contractor Defendants.

Plaintiffs **SHALL** file their fourth amended complaint on or before **April 17, 2026**. Defendants Olin, Arch, Pen, and Robins **SHALL** respond to Plaintiffs' complaint on or before **May 18, 2026**.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[15] Amendments that do not allege new claims or fundamentally alter those now alleged against Defendants will inherently be less prejudicial to Defendants.